Case on our calendar is United States of America v. Gu and Abel but I don't think we have a brief from Abel. For Appellant? Yes, good morning Judge. My name, may it please the court, my name is Jesse Siegel and I represent Appellant Allison Gu. I have reserved three minutes for rebuttal. Yes, you have. A person violates 18 USC section 1542 when she makes a false statement in a passport application intending to obtain a passport contrary to the laws regulating the issuance of passports or the rules prescribed pursuant to such laws. We submit that to violate section 1542 you have to actually apply for a passport. The government argues that you can be guilty of making a false statement in a passport application without actually applying for a passport. Because there's no dispute that in this case Ms. Gu did not actually apply for a passport. So the issue that's presented is at what point in the process does a person make a statement in a passport application? At what point does a person apply for a passport within the meaning of section 1542? I believe the case is one of first impression. Not only within the Second Circuit but within any of the circuit courts to the extent that I was able to find anything or was unable to find anything directly addressing this issue. Counsel, I don't know if you were the trial counsel for Ms. Gu, were you? I was not judge. So was there any objection by trial counsel to sending the question of whether there was an application to the jury since it's a matter of statutory interpretation? Ordinarily the judge makes those decisions, isn't that the case? Well that's correct. There were however rule 29 motions made and rule 33 motions made and actually in both of them the counsel below objected to or argued that the evidence was insufficient to establish this element. But my question goes before that. Why was the jury asked to decide a question of statutory interpretation? Why were they? It doesn't make sense to me in retrospect. Not having been the counsel below, I really can't answer why that question was even submitted to the jury judge. Why don't we deal with the statutory construction that you've got here. The crime that your client stands convicted of is stated in section 1542 which is willfully knowingly making any false statement in an application for a passport with the requisite intent. The statute on which you're relying for the oath requirement is section 213 that says before a passport is issued what a person shall subscribe to and submit a written application and if it's the first application it has to be duly verified by oath. But the question I have for you is why is it that the application is not submitted and then after the officer reviews it he puts the person under oath. But your client has submitted the document he thinks or she thinks is necessary for the passport when she puts it across the counter. And then the officer reviews it and if it's satisfactory he administers the oath without which the passport cannot issue. But it doesn't say that your client hasn't submitted a false application when she provides the document she's required to produce. Why isn't that the way we should construe these laws? Well first of all because section 1542 explicitly requires that not simply that the passport application be made contrary to the laws regulating the issuance of passports. Of course not but section 213 says the application shall be verified by oath. It doesn't say that an application is only provided when it's sworn. It says the application shall be verified by oath but the application is submitted even before that and then the officer administers the oath. Your client, let's be blunt about this, your client provided false information in order to get the passport and before she swore to it she pulled it back. But she took the time of the Department of State to review her application and my question to you is why isn't that what the law prohibits? Well one thing is we know from the testimony of the passport officer, Officer Pacheco, and also from the exhibits submitted that right on the application form itself there is a signature block and there is also above the signature block the oath is set forth saying I swear that the information contained in this application. As do many documents but in this case you couldn't take it to a notary to swear to. You have to be sworn before the passport officer or the Department of State official is that right? That's correct. Okay and so my question to you is when you submit the document that you intend to swear to to the officer, the officer reviews it and realizes it has false statements in it, why isn't the crime committed at that point? Because as the officer said, we have to then orally swear or read the oath so the person knows what they're doing. So until a person can reasonably believe that... That he can lie on the document until he's told he's going to have to swear to it? Well essentially, in a sense yes, that a person shouldn't feel that way but in a sense a person can based on the information available to her believe that she hasn't submitted the application until she has sworn to the truth of the information in the application. I think I understand that position. And in fact she withdrew the application and your argument is she never really submitted it. That's correct. That's precisely the argument. She never did. And you know I think that the point argued by counsel below sort of illustrates why that's not enough. If she had filled out the application at home, even with the requisite intent, but then didn't do anything with it, stuck it away in a drawer. We know that searches were conducted at her home subsequently and suppose the application at that time was found. Would that be sufficient to say that she had violated section 1542? That's the question I'm going to ask the government, so thanks. Before we speak to the government, let me ask you. You know there's another federal statute, 18 U.S.C. section 1001, that says that whoever in any matter within the jurisdiction of the executive branch of the government, knowingly and willfully falsifies a material fact or makes any material false or fictitious representation is punishable by law. Is your view that if your client was culpable for anything, she was culpable of that? Precisely, Judge. I actually raised that point in the brief. Okay. We'll ask the government about that. I'm sorry? We'll ask the government about that. Okay. Thank you. We'll hear from the government now. Good morning. May it please the court. I'm Mike Drescher from the U.S. Attorney's Office in Burlington, Vermont. The question in this case is whether a person who has filled in the State Department form DS-11 that the State Department prescribes should be used to apply for a passport, passes that form under the glass at the passport office along with other supporting documentation containing a false statement here, a false identity, and prosecutes that application process for over an hour has violated Section 1542. So answer the question that opposing counsel just stated as a hypothetical. What if she had filled out the form at home and put it in a desk drawer before the government finds it? Would that be a crime according to 1542? According to 1542, it might as a metaphysical matter constitute a crime. As this case acknowledged in George, the crime is committed when the statement is made, a false statement is made with the necessary intent. As a practical matter, there would be significant problems of proof. I don't know how the government would be able to prove intent under those circumstances. And also as a regulatory matter, a key distinction between that hypothetical and the facts we have here is that in this case, the application was submitted. I understand your argument. What if the government had found this filled out form when they did a search of her residence? Would that have been a crime? They found it in her desk drawer. The answer depends on the answer is maybe we don't know because how you can urge that. I don't know how you can urge that. I mean, counsel doesn't even think passing it across the counter should be enough. But for you to suggest to us that anything less than that might be an application for a passport is troubling. I'm wondering why you're urging something. You don't have to urge. I don't want the court to misunderstand me. The court certainly does not have to find that to affirm in this case. And I'm acknowledging that a case with those facts would be replete with several challenges and issues. Well, we're not concerned with what your evidentiary challenges are. We are concerned with what the crime is so that people know it. Your adversary has suggested we should go for a bright line rule. The oath is taken. That's when the application is made. It's clean. It's neat. Everybody understands it. You're urging something less would qualify as an application. And I think we need to know what you're saying is the triggering event at which this document becomes an application. And if you're saying it's possible that it could be that you're filling it out and leaving it in your desk drawer. You never submit it to anybody. I think you're going to have a tough road to hoe persuading us that that's how we should construe this statute. Were that the case before the court, I would agree.  I would point the court to the regulation, section 5120B in particular, which states all information and evidence submitted in connection with an application is considered part of the application. And you argue that she submitted it once she passed it to Mr. Pacheco? Not only do I argue it, it's consistent with Pacheco's testimony, I believe. The language you just cited is whatever is submitted together with the application. I think your adversary's view is, okay, once the application is sworn, everything that's attached to it has to be true and correct. Otherwise, you could be prosecuted for this crime. But not an unsworn application. An unsworn document is not an application in his view. And so the language you've just read to us doesn't alter anything because that document is not sworn to and therefore is not yet an application. Well, I would draw the court's attention to the regulatory definitions of application contained in 51.1 and 51.220, which I was just reading. 51.1 specifies that the passport application means an application form for a United States passport and all documents, photographs, and statements submitted with the form. If we look at 51.21, the regulations recognize that a completed application has to be signed. The regulations in their text distinguish between an application and a completed application. The application exists independently without the signature. I wonder whether the use of the word application in 1542 has not just the piece of paper notion of it, but the sense of submission, even before it is signed. And, for example, here, the application has been made an application. It's not in the desk drawer at home. It's not just a piece of paper, but it's being used as an application when it's presented to the department representative. And, therefore, the notion of submission is inherent in that, but it doesn't necessarily require the final oath because the engagement, the application is happening. And all that's happened here is that when she realized she was going to be caught, she attempted to withdraw it. But, in fact, the application aspect of it, the verb part, the motion, the submission part was already in play. And while that isn't quite so clean a bright line as you finally sworn at the very end under oath, which leaves open the possibility that you can withdraw it even if you've given false identity documents, you've made all kinds of false statements. And then if you see a little bit of suspicion in the clerk's eye, you get to withdraw it and avoid any responsibility for that. You know, we get to distinguish that circumstance, for example, from the write on a piece of paper and put it in a drawer, which seems to me can't possibly be a federal crime under 1542. Your Honor, I completely appreciate your point. And if the court is looking for that threshold question, the court need look no further than 5120's use of the term submission, which is clearly the case here. Officer Pacheco testified, I believe, at page 74 of the appendix that the materials were initially submitted. The court below and, in fact, counsel below conceded in the post-trial motion that the application was initially submitted. And the facts in this case are clear that Ms. Gu spent more than an hour in the passport office having submitted the application containing the false information, prosecuting her application. I'm not asking the court to find, we're not asking the court to conclude that the crime can be violated by a hypothetical situation where there's a false statement written on a napkin or even the application form that is never submitted to the State Department. And indeed, 51.1 would support that because the definition of application there talks about what is submitted. So that's the controlling verb. Would you agree with that? I agree. That an application is documents that are submitted. I agree. Okay. So we take that together with then 51.20. And that's what supports your argument, if I understand you correctly. Am I now getting it? Both, yeah, I believe you are, Your Honor. Counsel, if five of us people of goodwill can disagree on what an application is, why doesn't the rule of lenity apply? The rule of lenity will only apply when there is a question of ambiguity. You don't think there's any ambiguity here? I don't, Your Honor. The statute prohibits any false statement on an application contrary to the laws and regulations. The laws and regulations define application to constitute the State Department-specified form, here the DS-11, and the application and the information submitted with that form. Counsel, are we talking about statutory construction? Certainly, we believe the statute is clear on its face to put Ms. Gu on notice. Why was it submitted to the jury rather than decided by the judge whether there was indeed an application? There was a charge conference. I've read the charge. It's plain vanilla, nothing special. I think that's a question better put to my friend on the other side, who had the appellate record to work with, who could have challenged the instructions on appeal rather than challenging a question that we think is one of context and fact, and that is whether the jury here could reasonably conclude that Ms. Gu submitted an application for a passport consistent with the testimony of Officer Pacheco, consistent with the concessions of counsel below and her post-trial motions, that contained a false statement. Not only did she submit it by sliding it under the glass, she spent more than an hour in the passport office, completed a supplemental biographic questionnaire in furtherance of her application, furthering the false statement, and then when she decided to try and take the papers back, it should be noted that she explained to Officer Pacheco that she was not intending to abandon the effort to obtain an application. She just thought she'd go pursue it in another office. Right, but she can't be prosecuted for what she thinks, right? Are we all agreeing with that? Well, I think technically I disagree, because we need to show that she is thinking that she's intending to obtain a passport. But she never did. She never did. She never did resubmit this, did she? She never did resubmit this, no, but she intended to obtain the passport as evidenced by her actions, her words, as illustrated in this case. And as Officer Pacheco explained, the application process is a process. The oath and affirmation is at the very end of that process, and this case is a clear example of how a person will be applying for a passport, will be engaging in the application for applying for the passport by submitting, by providing the information to the passport office. What do you make of the fact that she withdrew it? Does that figure at all in whether there's a crime? It does not, because as this court recognized in George, the crime is committed when the false statement is made with the necessary intent. As we explained in our brief, there's no question of the falsity, and the evidence is overwhelming that Ms. Gu intended to obtain a passport. Your statement there suggests that you're back at the desk roar, that she had never even gone to the passport office, that she wrote the application with the necessary intent, that that would constitute the crime. That's the problem with the hypothetical. There is nothing to suggest the necessary intent. But isn't it defeated by the language of 51.1, which has its critical verbs submitted? That's why I don't understand your maybe argument with respect to the hypothetical. There's no maybe about it. 51.1 says an application is something that's submitted. Your Honor, I am perfectly comfortable with the court drawing the line at the submission of the application. I'm not asking the court to find... Counsel, you heard, I think it was you or Judge Rajai, who said the crime is committed when the statement is made. That's what George says. I don't think I said that. Not only did I say it, this court said it in United States v. George. But in the context of a submitted application. I don't think you can divorce that statement from the context of the case. That is completely correct, Judge Rajai. It seems to me like this is the definition of ambiguity, but your time has expired, Counsel. We'll hear from Mr. Siegel for three minutes. Thank you. Thank you, Judge. I don't know that I'll take the entire three. My esteemed adversary stops so close to the rule that answers the question. Which is 22 CFR 51.21 sub A. Which is titled, execution of passport application. And that says that an application must be signed and sworn to. Well, that's when it's executed. That's different from submitted. I understand that. And you know that titles aren't given much weight in statutory construction. How do you deal with the definition of an application in 51.1? I mean, it seems to me your client's conduct certainly fits that. Well, again, it really becomes parsing the word submission. When do you submit something? And this also goes to something raised by my esteemed adversary. Which is that although the oath and signature is something that's done at the end. It actually appears from what I understand on the first page of the application. So once again, a person might not assume or think that they are submitting anything. Until they have actually signed it and sworn to it. And again, I go back to the testimony of Officer Pacheco. I'm sorry, I'm interrupting. But you said a person might think they're not actually submitting something. Until they sign at the end. And so the premise that she could go ahead and submit false identity documents. And tell a story to the government over the course of an hour. In connection with her actual application seeking. No one doubts that she was seeking a passport. That she can do that with impunity. And if she decides at the end that the guy is actually a little suspicious of her. Then she can withdraw it. And as long as she has not signed the application. Then she's free of any culpability. Is that your position? The statute allows that? That she hasn't submitted anything? That is correct. Although I would disagree. I don't see where that would come from. Now turning to 1542. What you have to do is make a false statement in an application. It would seem to me you then go to the definition of application. Which is something that is submitted. But you make a false statement in that application with intent to induce. That's it. The question is when do you submit an application? Do you submit an application at some preliminary stage? Where you're discussing it with the passport officer? Or do you submit it when you sign it and swear to it? Well at that point it's basically out of your hands except for the oath. You've submitted it in an intent to basically fool the passport officer. That you're the person who you've identified yourself as. That you have the other qualifications that you've just said in the report. You've given that to the passport officer for what purpose? I would not dispute that if Ms. Gu followed through, signed and swore to the application. That I could not challenge the sufficiency of the evidence based on her intent. She did it so that he would administer the oath to her. He would administer the oath to her. So she did it in order to get the oath administered. Which she needed in order to get the passport. Isn't that what happened here? They were the oath when he discovered the problems. Well he didn't refuse to administer the oath. She decided before she decided to go through with the process. Which entailed signing it and swearing to it. That she no longer wished to do that. It seems to me that the process itself is designed to discourage somebody from following through. Well first the officer determined that it lacked a proper photograph. She left and returned with a photograph. Then she had the hour long interview. And you're saying there wasn't any concern at that point? Well it apparently hadn't ripened to the point where she decided yet to abandon it. But it did get to the point. I guess I would ask the question. What's the purpose of requiring an oath if you've already committed the crime? Well the officer may not completely know that you've committed the crime. But okay. Alright. And if I could just answer one question. I believe it was raised by Judge Pooler. Oh no. It might have been Judge Carney. I'm sorry. But in any event. The question of whether a person could go through this entire thing with impunity. You know and just simply walk away from it. As I argued below and as Judge Raji raised. No. She could have been prosecuted for violating section 1001. Which does not require a signature or an oath. But she wasn't of course. That wasn't one of the sections of law that she was charged with. Correct. Well your term has long expired. Thank you both for a lively argument. We'll reserve decision. Thank you. Thank you both. The balance of our calendar is on submission. So I will ask the clerk to adjourn court. Thank you. Course then is adjourned.